IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELLIE STEWART, | ) |
| Plaintiff, | ) Case No. 10 C 2033 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| BAC HOME LOANS SERVICING, LP, DEUTSCHE BANK NATIONAL TRUST CO., and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

On April 1, 2010, plaintiff Ellie Stewart ("Stewart") filed the current complaint against Defendants BAC Home Loans Servicing ("BAC"), Deutsche Bank National Trust Company ("Deutsche Bank") and Mortgage Electronic Registration Systems ("MERS") (together, "Defendants") alleging violations of the Truth In Lending Act ("TILA") (15 U.S.C. §§ 1601-1667f) and its implementing regulation, 12 C.F.R. § 226 ("Regulation Z"), and demanded rescission of the mortgage on her residence.

Defendants moved to dismiss the Complaint, asserting BAC and MERS are improper defendants under TILA, the Complaint is time-barred and the Complaint fails to state a claim. For the reasons stated below, Defendants' motion is granted in part and denied in part. The Court dismisses Stewart's failure to disclose claim because it is untimely, but denies dismissal of Stewart's rescission claim. The motion to dismiss is denied with regard to the failure to honor rescission claim against defendants Deutsche Bank and BAC.

I.   **BACKGROUND**

　　A.   **Complaint Allegations.**

Stewart owns her residence in Chicago, Illinois. (Compl., Doc. 1, ¶ 4.) On October 24, 2006, Stewart refinanced her mortgage on this residence through Home 123 Corporation ("Home 123"). (Compl. ¶¶ 5-8, 10.) Home 123 filed for Chapter 11 bankruptcy in April 2007 and Deutsche Bank is the current assignee of this loan. (Compl. ¶¶ 5, 8, 21.) BAC services this loan and MERS is the nominee. (Compl. ¶¶ 7-9; Ex. C.)

This case stems from a dispute concerning the documentation provided at the closing of Stewart's refinance back in 2006. Stewart alleges that Home 123 violated TILA twice in regards to these documents. First, she claims that Home 123 did not provide her with a copy of the Notice of Right to Cancel ("NORTC"). (Compl. ¶¶ 19-20.) Second, she claims that Home 123 provided a Truth in Lending Disclosure Statement ("TILDS") that was incomplete because it did not include the timing of the required loan payments. (Compl. ¶¶ 17-18.)

Due to these deficiencies, on October 14, 2009, Stewart's attorneys sent a letter entitled "Notice of Rescission and Lien" to Home 123 and BAC. (Compl. ¶ 23.) The letter stated that "Ms. Stewart hereby elects to cancel the loan of October 24, 2006 for failure to comply with the Truth In Lending Act," and specified that Home 123 failed to provide the NORTC and a complete TILDS. (*See* Doc. 23-1.) The letter also demanded the identity of the owner of the mortgage. (*Id.*) On January 26, 2010, BAC sent a letter to Stewart which denied her rescission claim. (*See* Doc. 23-2.) BAC asserted that Stewart's right to rescind had expired and attached copies of the NORTC and TILDS purportedly signed by Stewart and dated October 24, 2006. (*Id.*)

B. **Procedural History.**

On April 1, 2010, Stewart filed this suit and it was assigned to Judge Harry Leinenweber. Defendants filed the present motion to dismiss on August 11 and briefing was completed on October 5. On October 28, Judge Leinenweber requested that the parties provide a copy of Stewart's rescission letter and submit a supplemental brief addressing whether Stewart's election to rescind constituted proper notice to Deutsche Bank as assignee of Home 123. Supplemental briefing was completed on November 8. The case was transferred to this Court on December 8.

## II. LEGAL STANDARD

A motion to dismiss should be granted if the complaint fails to satisfy Rule 8's pleading requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Tamayo v. Blagojevich*, 536 F.3d 1074, 1081 (7th Cir. 2008) (holding well-leaded allegation of the complaint must be accepted as true).

Although a complaint does not need detailed factual allegations, it must provide the grounds of the claimant's entitlement to relief, contain more than labels, conclusions, or formulaic recitations of the elements of a cause of action, and allege enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Iqbal*, 129 S. Ct. at 1950–51.

## III. DISCUSSION

The complaint has three core claims. First, Stewart claims that Home 123 violated TILA by failing to provide her with the NORTC and a complete TILDS. For this "failure to disclose" claim, Stewart seeks statutory damages of $4,000 from Deutsche Bank as Home 123's assignee. (Doc. 1, Prayer for Relief.) Second, Stewart seeks recession of the loan based on this disclosure violation. For this "loan rescission" claim, Stewart seeks a judgment forcing Defendants to void the loan and return her to the position she occupied before entering into the mortgage. (*Id.*) Third, Stewart alleges that Defendants failed to honor her election to rescind, which is itself a violation of TILA. For this "failure to honor rescission" claim, Stewart seeks actual damages and statutory damages of $4,000 from Defendants. As an additional remedy for all three claims, Stewart seeks an order requiring Defendants to delete all adverse credit information relating to the loan. (*Id.*)

The present motion presents four legal issues that need to be resolved to determine which, if any, of these three claims may stand. First, Defendants seek to dismiss BAC and MERS, asserting that servicers and nominees are improper defendants in a TILA action. Turning to Stewart's individual claims, Defendants argue that the failure to disclose claim is barred by a one year statute of limitations because the alleged violation occurred over three years ago. Next, Defendants assert that the rescission claim is barred by a three-year statute of repose because the loan closed on October 24, 2006 but this suit was not filed until April 1, 2010. Finally, Defendants argue that the failure to honor rescission claim fails because assignees are not liable for TILA violations which are not apparent on the face of the loan disclosures.

4

### A. Liability of MERS and BAC Under TILA.

Only creditors and assignees are subject to liability under TILA. *See* 15 U.S.C. §§ 1640, 1641(a). Stewart acknowledges that MERS is not a creditor or assignee. (S*ee* Doc. 15 at 4.)[1] Therefore, MERS is not subject to damages under TILA and Stewarts' failure to disclose and failure to honor rescission damages claims against MERS are dismissed. *See* 15 U.S.C. §§ 1640, 1641(a); *see also Horton v. Country Mortg. Servs., Inc.*, No. 07 C 6530, 2010 U.S. Dist. LEXIS 67, at *3 (N.D. Ill. Jan 4, 2010) (granting summary judgment to MERS because the plaintiff provided no evidence that MERS was a creditor or assignee). Stewart claims MERS is still a proper party based on the non-monetary relief requested in connection with the rescission. Stewart seeks an order "voiding" her mortgage, (*see* Doc. 1 at Prayer) and, according to her, "this Court may directly order MERS to record a release or take other actions in connection with the mortgage document that was recorded." (Doc. 15 at 4.)

The Court notes that courts in this District are split on whether such a party, usually a servicer, may be kept in a case based on such contingent, or future, relief. *Compare Miranda v. Universal Fin. Grp., Inc.*, 459 F. Supp. 2d 760, 765-66 (N.D. Ill. 2006) (denying dismissal of loan servicer as an indispensable party under Rule 19 because a rescission would require return of payments made on the loan and "could impair the borrower's ability to fully protect his or her interest in rescinding the loan because the servicer could improperly report to credit bureaus") *with Bills v. BNC Mort., Inc.*, 502 F. Supp. 2d 773, 776 (N.D. Ill. 2007) (finding "a concern that [the

---

[1] The Court also notes that the mortgage instrument attached to the complaint identifies MERS as "a separate corporation that is acting solely as a nominee for Lender and Lender's assigns." (*See* Doc. 1, Ex. C at 1.) Though Stewart alleges MERS has an interest in the loan (*see* Compl. ¶ 7), the exhibits contradict that pleading and the exhibits control. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998).

servicer] might thereafter engage in improper reporting to the credit agencies or attempt to foreclose on a rescinded loan is purely speculative and does not warrant retaining [the servicer] as a defendant"). The Court agrees with *Miranda* and the cases it cites because they appear more consistent with the Seventh Circuit's holding in *Handy v. Anchor Mortgage Corporation*, 464 F.3d 760, 765-66 (7th Cir. 2006). There, the Seventh Circuit held "more generally . . . the right to rescission 'encompasses a right to return to the *status quo* that existed before the loan.'" *Id.* (internal citation omitted). *Handy* makes clear that rescission under TILA entirely unwinds the transaction. Because Stewart alleges, albeit generally, that MERS may be necessary to get her back to that *status quo* if her rescission is enforced by the Court, MERS cannot be dismissed entirely at this time. Rather, Stewart's rescission claim stands as to MERS.

As to defendant BAC, TILA expressly disclaims liability for servicers "unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1). Stewart alleges that BAC "has an interest" in the loan and, as a result, is subject to liability. (Compl. ¶ 7.) While Stewart does not provide any specifics on how a loan servicer gained an interest in the loan, on a motion to dismiss, the Court must accept this allegation as true. *See Tamayo*, 526 F.3d at 1081. Even if the Court could ignore this allegation, BAC must remain a defendant in any event. The pleadings reveal that the January 26 letter refusing Stewart's rescission was sent by BAC, not Deutsche Bank. BAC is a necessary defendant on the failure to honor rescission claim because it is not clear whether BAC independently refused rescission, refused as an agent of Deutsche Bank, or merely communicated Deutsche Bank's refusal. As such, BAC cannot be dismissed outright as it may be liable on this claim.

### B. Failure to Disclose Claims.

Stewart asserts that Home 123 committed two disclosure violations during the refinance closing: (1) it failed to provide two copies of the NORTC and (2) it failed to provide a complete TILDS. Although this claim alleges violations by Home 123, the claim is currently against Deutsche Bank based on its status as the assignee of Home 123. TILA permits an individual to assert a claim against a creditor for disclosure violations so long as such action is brought within one year from the occurrence of the violation. *See* 15 U.S.C. §§ 1640(a), 1640(e); *see also Garcia v. HSBC Bank USA, N.A.*, No. 09 C 1369, 2009 U.S. Dist. LEXIS 114299, at *9-10 (N.D. Ill. Dec. 7, 2009) (finding the § 1635's three year period for rescission does not extend the one-year period available under § 1640(e) to assert damages claims for disclosure violations and noting that the majority of courts in this District have found "affirmative damage claims for disclosure violations must be brought within one year of the closing of any credit transaction"). Stewart filed this claim on April 1, 2010, over three years after the October 24, 2006 loan closing and well past the one year statute of limitations. Stewart's failure to disclose claim is time-barred and dismissed with prejudice against all defendants.

### C. Loan Rescission Claim.

The next issue in this case is whether Stewart is time-barred from seeking rescission in court. "Under the Truth in Lending Act, [] 15 U.S.C. § 1601 *et seq.*, when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement" under certain conditions. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 411 (1998). A borrower typically has three days to rescind following execution of the transaction or delivery of the required disclosures. *See* 15 U.S.C. § 1635(a). However, under § 1635(f) of TILA, the right of rescission is extended to "three years after the date of consummation of the transaction or upon the

sale of the property, whichever occurs first," if any of the required disclosures are not delivered to the borrower. *See* 15 U.S.C. § 1635(f). Stewart alleges that she did not receive the required disclosures, so this case involves the extended three year period. Here, the loan transaction occurred on October 24, 2006; Stewart sent a letter electing to rescind the transaction on October 14, 2009, and then filed her complaint in court on April 1, 2010. This time line presents the legal question of whether a claim for rescission filed after the three-year time period is timely if a rescission letter is sent within the three-year time period.

Stewart argues that she exercised her right to rescind within the three years, as required by § 1635(f), because her letter actually rescinded the loan. According to Stewart, this suit is just the legal remedy to force Defendants to accept her rescission. Stewart argues that she is entitled to an additional year after Defendants' failure to accept the rescission to file suit under § 1640(e). Defendants argue that the language of § 1635(f) creates a statute of repose that completely extinguishes the right to rescind after the three year-time period. As Stewart filed suit over three years after the closing, Defendants assert that Stewart's recession claim under TILA is barred.

Both parties cite authority for their respective positions from many different jurisdictions. *E.g.*, *compare Falcocchia v. Saxon Mortg., Inc.*, 709 F. Supp. 2d 860, 868 (E.D. Cal. 2010), *with Sherzer v. Homestar Mortg. Servs.*, No. 07-5040, 2010 WL 1947042, at *11 (E.D. Pa. July 1, 2010); *see also Obi v. Chase Home Fin., LLC*, No. 10-C-5747, 2011 WL 529481, *4 (N.D. Ill. Feb. 8, 2011) (Kendall, J.) (noting "[t]here is a split of authority as to whether § 1635(f) requires a borrower to file a rescission claim within three years after the consummation of a transaction or whether the borrower need only assert his right to rescind to a creditor within that three year period" and collecting cases.) Stewart's authority concludes that a borrower exercises her right of rescission when she mails a

notice of rescission to the creditor, so rescission occurs at the time of the letter. *See* 12 C.F.R. § 226.23(a)(2). Defendants' authority, on the other hand, holds that a borrower cannot unilaterally rescind a loan, and therefore can only preserve her rights by filing a suit for rescission within the three-year time period. The Seventh Circuit has not yet addressed this issue so this Court has no binding guidance.

As the Court indicated in *Obi* (albeit in dicta), the Court is persuaded by the authority finding that a borrower may assert his rescission rights under § 1635(f) through notice to the creditor. *See Obi*, 2011 WL 529481 at *4; *see also In re Hunter*, 400 B.R. 651, 661-62 (N.D. Ill. 2009) (finding "[t]he three-year period limits only the consumer's right to rescind, not the consumer's right to seek judicial enforcement of the rescission" (internal citation omitted)). The approach in *Hunter* is more consistent with the language of § 1635 and Regulation Z than the approach advocated by Defendants. Section (a)(2) of Regulation Z provides explicit instructions to the consumer as to how to exercise her right to rescind: "[t]o exercise the right to rescind, the consumer shall notify the creditor of rescission by mail, telegram, or other means of written communication." *See* 12 C.F.R. § 226.23(a)(2). The next provision of Regulation Z, § (a)(3), describes when a consumer may exercise that right: either within the three-day "cool off" period, if all proper disclosures are made, or within the three-year period, if they are not. *See* 12 C.F.R. § 226.23(a)(3). The more reasonable interpretation of Regulation Z is that § (2)(a)'s method of exercising the right to rescission applies to both scenarios under § (3)(a). Indeed, this approach is consistent with the wording of the statute. Even if a consumer received all necessary disclosures, § 1635(a) allows a consumer to rescind within the three-day "cool off" period after closing "by notifying the creditor, in accordance with regulations of the [Federal Reserve Board ("FSB")], of his intention to do so." 15 U.S.C. § 1635(a).

9

Though § 1635(f) has no comparable reference to the FSB regulations, it seems incongruous for the FSB to allow rescission via letter during the "cool off" period—in accordance with Regulation Z—but require a consumer to bring a suit to exercise that same right to rescind under § 1635(f).

The Court's approach is not inconsistent with *Beach*. In that case, the Supreme Court found a defendant could not assert rescission as an affirmative defense under TILA beyond the three-year period. *See Beach*, 523 U.S. at 418. The Court noted that § 1635(f) "says nothing in terms of bringing an action but instead provides that the 'right of rescission [under TILA] shall expire' at the end of the time period . . . it talks not of a suit's commencement but of a right's duration . . . ." *Id*. at 417. *Beach* addresses *when* the right to rescind expires and whether it can be tolled. It leaves unresolved the question of *how* a consumer must exercise that right to rescind – suit, or notice via letter.

The Court turns to the question of when a consumer, having exercised her right to rescind by sending a letter to her creditor, must bring suit to enforce that exercise. In *Hunter*, the debtor, like Stewart, sent notice to the creditor before the three-year period expired, but his trustee filed suit after expiration. *Hunter*, 400 B.R. at 659. As Stewart did here, the trustee brought suit within a year after the creditor allegedly failed to respond to the rescission notice. *Id*. *Hunter*, citing the one-year limitations period in § 1640(e), found that the trustee's action for rescission was timely, as it was brought within a year of the alleged violation of TILA, namely the refusal to respond to the rescission request. *Id.*; *see* 15 U.S.C. 1635(b) (requiring a creditor to "take any action necessary or appropriate to reflect the termination of any security interest created under the transaction"). The Court adopts the *Hunter* approach. Under this approach, the last day a borrower may send notice to rescind is the three-year anniversary of the transaction. If the borrower has not sent notice by that

time, her right to rescind expires under § 1636(f). If the borrower sends timely notice, the creditor then would have 20 days to respond after receipt of that notice. *See* 15 U.S.C. § 1635(b). The borrower then has one year from the end of that 20-day period to bring a suit to enforce the rescission under § 1640(e)'s limitations period. *Hunter*, 400 B.R. at 660-61, *see also Johnson v. Long Beach Mort. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 39-41 (D.D.C. 2006) (applying § 1640(e)'s one year period to enforce rescission claim after notice); *Sherzer*, 2010 WL 1947042, at *11 (following *Hunter*). This approach balances the creditor's need for certainty (the borrower cannot indefinitely fail to bring suit to enforce the right to rescind she exercised) with the express language of Regulation Z (which states that a borrower may exercise the right to rescind through notice by mail). Because Stewart brought suit within five months of her recession notice, Stewart's claim for recession is timely.

### D. Failure to Honor Rescission Claim.

A claim for damages for failure to honor rescission is based on § 1635(b) of TILA, which requires a creditor to respond to a notice of rescission within twenty days of receipt. If a creditor does not respond within the statutorily-mandated period, TILA permits an individual to bring a claim for damages against the creditor. 15 U.S.C. § 1640(a). An action for damages must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). An assignee's failure to honor a valid rescission notice made pursuant to § 1635 may subject the assignee to actual and statutory damages. 15 U.S.C. § 1640(a).

Stewart asserts that she did not receive a NORTC or a complete TILDS as required by TILA, so she had a right to rescind her loan. Specifically, the TILDS does not state the timing of payments, as Regulation Z requires. *See* 12 C.F.R. § 226.18. Defendants respond that they were not the

original creditor, and as assignees (at best), they are only required to rescind if the violations were apparent on the face of the documentation and that they were not in this case. *See* 15 U.S.C. § 1641(a) (assignee is only liable if the violation "is apparent on the face of the disclosure statement").

The Seventh Circuit has specifically addressed the requirements for the payment schedule in the TILDS. In *Hamm*, the TILDS listed the payment schedule as 359 payments of $541.92 beginning on March 1, 2002 and one payment of $536.01 on February 1, 2032. *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525, 527 (7th Cir. 2007). The court found that this violated TILA because it did not list all payment dates or state that payments were to be made monthly, and TILA requires such specificity in the TILDS even though "many (or most) borrowers would understand that a mortgage with 360 payments due over approximately 30 years contemplates a payment by the borrower each month during those 30 years." *Id.* This case is no different. Stewart alleges that her TILDS listed 359 payments at $3,103.53 but failed to mention that these payments would be made monthly. Exhibit A of Stewart's complaint, her TILDS, shows the incomplete payment schedule on the face of the document. That schedule is almost exactly the same as the one the Seventh Circuit found insufficient in *Hamm*. *Id.* at 527. Consequently, Stewart alleges a disclosure violation apparent on the face of the documents which would grant Stewart the right to rescind against Defendants as assignees. Stewart's NORTC claim does not need to be evaluated at this time because her failure to honor rescission claim could be based on either a NORTC or TILDS violation, and the TILDS allegations stand.

The final issue is whether Defendants are responsible for refusing to respond and for rejecting rescission. This turns on whether Stewart's notice of rescission was properly sent to Defendants. In response to a request from Judge Leinenweber prior to reassignment of this case to this Court, the

12

parties addressed whether Stewart properly noticed defendant Deutsche Bank of her election to rescind when she sent letters to only BAC and Home 123, which filed for Chapter 11 bankruptcy in 2007. Courts within the District have reached different conclusions under similar factual scenarios. *Compare Harris v. OSI Fin. Servs. Inc.*, 595 F. Supp. 2d 885, 897–98 (N.D. Ill. 2009) (finding that notice of election to rescind sent to the original creditor did not suffice as notice to the assignee), *with Hubbard v. Ameriquest Mortg. Co.*, 624 F. Supp. 2d 913, 921–22 (N.D. Ill. 2008) (concluding that an election to rescind sent to the original creditor is sufficient to seek rescission against an assignee) *and Schmit v. Bank United FSB et al.*, No. 08 C 4575, 2009 WL 320490, at *3 (N.D. Ill. Feb. 6, 2009) (acknowledging disagreement between *Harris* and *Hubbard* and following *Hubbard*).

Stewart acknowledges that she did not send a notice of rescission to defendant Deutsche Bank. (*See* Doc. 23-1.) She alleges that she, like many borrowers, was unaware who owned her mortgage note. She did not know that Deutsche Bank was the assignee of her loan, and so she requested notice of the "identity of the owner of this note" from Home 123 and BAC in her rescission letter. (*Id.*) Stewart argues that she complied with TILA and Regulation Z by mailing notice to the original creditor, Home 123, and the loan servicer, BAC. Stewart distinguishes *Harris* from the current case because "there is no mention of whether the consumer in *Harris* mailed a notice to the loan servicer or another party who may be the agent of the holder of the note." (Doc. 23 at 4). Deutsche Bank concurs that mortgage ownership changes make communication difficult, but suggests that this actually supports the approach of the *Harris* court. *Harris* noted that "adopting Stewart's interpretation of the notice requirement . . . would have the absurd effect of subjecting to rescission and damages assignees that, in some case, have absolutely no means of discovering that a rescission demand has been made." (Doc. 22 at 2 (quoting *Harris*).)

13

The split between *Harris* and *Hubbard* does not need to be resolved at this stage of litigation due to the particular facts of this case. Stewart alleges that she sent BAC the rescission notice on October 14, 2009, ten days before the three-year deadline. BAC denied the rescission in a letter sent to Stewart on January 26, 2010. While *Harris* was concerned that an innocent party with no notice could be subject to damages, this case involves clear notice to at least one party that Stewart seeks to hold responsible. BAC received notice, did not respond within 20 days, and then refused to rescind the transaction. Deutsche Bank's involvement is less clear, but Stewart alleged sufficient facts to proceed with her case under the theory that BAC either forwarded the notice to Deutsche Bank or acted as its agent in the transaction. This is a reasonable inference given that BAC, the loan servicer, actually responded to the rescission notice and refused it without referring to whether the assignee, Deutsche Bank, assented to the decision. BAC, Deutsche Bank, or both refused to rescind the transaction and discovery is necessary to sort out who is responsible for the decision to deny the rescission.

## IV.    CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss (Doc. 10) is:

1. Granted as to Stewart's failure to disclose claim against all Defendants;

2. Denied as to Stewart's rescission claim against all Defendants; and

3. Denied as to Stewart's failure to honor rescission claim against defendants Deutsche Bank and BAC, but granted as to defendant MERS.

SO ORDERED.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 10, 2011